Argued and submitted February 2, affirmed April 27, petitioner Cole's reconsideration allowed (66 Or App 7, 672 P2d 1213) former opinion adhered to December 7, 1983, petition for review allowed February 15, 1984 (296 Or 486)
See 297 Or 290, 686 P2d 316 (1984)

# WARREN et al,
### *Petitioners,*
*v.*
# LANE COUNTY et al,
### *Respondents.*

### (81-102; CA A25365)

662 P2d 755

Timothy J. Sercombe, Eugene, argued the cause for petitioners. With him on the brief was Johnson, Harrang & Swanson, Eugene.

William A. Van Vactor, County Counsel, Eugene, argued the cause and filed the brief for respondent Lane County.

Stephen T. Janik, Portland, argued the cause for respondents Victor Renaghan and Linda Renaghan. With him on the brief were Susan Quick Rosenfeld, and Ball, Janik & Novack, Portland, and Michael E. Farthing, and Husk, Gleaves, Swearingen, Larsen & Potter, Eugene.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners appeal an order of the Land Use Board of Appeals (LUBA) dismissing their appeal of a comprehensive plan amendment and related land use decisions by respondent Lane County. The basis for the order was that petitioners lacked standing to appeal to LUBA under Oregon Laws 1979, chapter 772, section 4(3), as amended by Oregon Laws 1981, chapter 748.[1] We affirm.

■    Petitioners challenge an amendment to the Lane County Coastal Subarea Plan, a Goal 2 exception to Goal 4 "allowing forest land resource conversion," and zone changes. According to LUBA, those actions will enable respondents Renaghan

"* * * to develop the property with a 40 unit lodge, restaurant, trading post, 30 cabins, parking facilities, trails, two owner's residences, wells and drain fields. All necessary services and facilities for the project are proposed to be provided on site, including a community water system, community waste disposal system and fire protection facilities.

"The parcel is located approximately 15 miles north of Florence and east of Highway 101. The property is bifurcated in the southern section by Big Creek Road and Big Creek."

Section 4(3) provides:

"Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

---

[1] LUBA issued four orders in the case. The final order was issued after LUBA took evidence regarding the standing allegations of petitioner Tony Cole. LUBA concluded in that order that Cole did not have standing. The earlier orders had reached the same conclusion with respect to the other petitioners. Petitioners appeal only from the final order. Respondents argue that the petitioners other than Cole do not have standing to appeal LUBA's dismissal to this court — or that we lack jurisdiction over their appeals — because their standing before LUBA was not determined by the order appealed from and no appeal was taken from the orders in which LUBA concluded they lacked standing. Petitioners argue that the appeals of three of them, including Cole's, are properly before us. We think the question is academic, and we decline to reach it. Petitioners make no arguments to us to the effect that any of the other petitioners would have standing if Cole does not. If Cole does have standing before LUBA, we find no allegations in the petition that Cole could not pursue independently of the other petitioners. *See Thunderbird Motel v. City of Portland,* 40 Or App 697, 704, 596 P2d 994, *rev den* 287 Or 409 (1979).

"(a)    Appeared before the city, county or special district governing body or state agency orally or in writing; and

"(b)    Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

Here, petitioners appeared in the local proceedings. Their standing to appeal to LUBA therefore depends on whether they were entitled as of right to notice and hearing, were adversely affected *or* were aggrieved by the county's decision.

Petitioners argue in their first assignment of error that they are "aggrieved," within the meaning of section 4(3), because the county's failure to give them adequate notice of the hearing before the governing body on the proposed plan amendment precluded them from participating in the hearing and, therefore, from participating in the comprehensive planning process. Although petitioners appear to agree that section 4(3), is applicable, they argue:

"This right of involvement is no less basic where a comprehensive plan is sought to be amended, even if that amendment is roughly categorized as quasi-judicial. Such an amendment, even if discrete, has both policy-formation (legislative) and policy-application (adjudicative) aspects. An amendment, such as requested in the case at bar, affects the particular allowable use for a parcel. But such an amendment, particularly where a resource goal exception or change in an urban growth boundary is requested, impacts the overall land use allocations within the plan and the internal consistency of the plan. A citizen interest in that amendment can be either specific (dealing with the particular land use change at issue) or general (addressing the effect of that change on other land use allocations or policies in the plan).

"Amendments to comprehensive plans, in other words, are never purely quasi-judicial exercises. They must functionally relate to other unamended portions of the plan. * * *"

Petitioners do not make clear what notice was given or was not, and they state but do not explain why

relevant statutes, local provisions and Goal 1 and 2 requirements were not satisfied.[2] Be that as it may, the only issue in this appeal is whether petitioners have standing to appeal to LUBA. They do not contest LUBA's statement that "[p]etitioners, for purposes of claiming standing, do not assert they were entitled as of right to notice and hearing." They argue that they are *aggrieved* because they were not given adequate notice, but that proposition is circular: if they were *entitled* to notice, they have standing, whether or not notice was given; if they were not entitled to notice, it is difficult to see how their not receiving notice in itself makes them aggrieved and thereby gives them standing.

■ The *general* point of petitioners' first assignment of error seems to be that they are aggrieved by the putatively inadequate notice *because* they are aggrieved by the county's decision. Although we find the notice argument itself to be circular, the underlying point is made more clearly in petitioners' second assignment of error, in which they contend:

> "* * * [D]isagreement with the result and residency within the planning area for which a comprehensive plan change is effected makes the objector 'aggrieved' by the decision. No other showing is necessary to obtain standing.
>
> "* * * * *
>
> "In order to preserve 'a reasonable statutory scheme' who did the Legislature intend to have standing to challenge a rural comprehensive plan amendment affecting a resource land conversion? Petitioners contend that *any* resident of the rural planning area has such standing and is a 'person . . . aggrieved' within the meaning of the statute." (Emphasis petitioners')

Neither petitioners, the county nor the Renaghans cite authority that they regard as controlling our disposition of this assignment, and we find the authority the parties do cite to be of marginal assistance. *See Benton County v. Friends of Benton County*, 294 Or 79, 653 P2d 1249 (1982)

---

[2] It appears from the record that the county attempted or purported to comply with the notice procedure of ORS 215.060. Petitioners alleged in their petition to LUBA, but do not detail here, how the county's notice fell short of what petitioners consider the statute and the goals to require.

(suggesting that judicial interpretations of standing require-
ments under one statute are not necessarily relevant in
interpreting another statute's standing requirements).

LUBA rejected petitioners' argument, stating:

"* * * Petitioner has also suggested that he be granted
standing because the county's decision involves the same
planning subarea of the county within which petitioner
resides. In other words, petitioner's mere residency within
the subarea is enough to give him standing:

"* * * * *.

"We do not believe we have the authority to do that
which petitioner requests, even if we were inclined, for
policy reasons, to agree with petitioner that we should do
so. 1979 Or Laws, ch 772, sec 4(3), as amended by 1981 Or
Laws, ch 748, requires a showing that a person's interests
are adversely affected or s/he is aggrieved by the land use
decision. Varying this standard depending upon the issues
involved in the appeal is not, in our judgment, allowed.
Allowing standing based upon mere residency within the
subarea would require that we entertain a presumption of
adverse effect or aggrievement which we find to be unwar-
ranted."

After LUBA's decision, and apparently after the
parties had prepared their briefs, the Supreme Court
decided *Benton County v. Friends of Benton County, supra.*
That opinion contains dictum explaining the distinction
between the "adversely affected" and "aggrieved" standing
criteria in section 4(3):

"A person who wishes to appeal a ruling in his favor,
but one less favorable than requested, is aggrieved without
having to argue whether his interests are 'adversely
affected' by the partial victory. Such an argument otherwise
might have at least surface plausibility where the statutory
test had been changed from 'substantially affected' to
'adversely affected,' but the separate term 'aggrieved' makes
this immaterial. Also, the 'persons' who may seek review of
land use decisions include governmental subdivisions or
agencies and other 'public organizations.' Or Laws 1979, ch
772, § 3(2), *supra* n 4. It might plausibly be argued that
public agencies are assigned responsibility for various
aspects of public policy but have no 'interests' of their own
to be 'adversely affected' by an adverse decision. Again,

however, a public agency may claim to be 'aggrieved' by a decision against some public interest for which it has responsibility without debating whether the agency's own interest is 'adversely affected.' *Who is 'aggrieved' also may vary with the land use goal or other governing criteria that is said to be violated by the challenged decision. The statute does not limit either adverse effect or aggrievement to property interests which must be in physical 'proximity' to the disputed land use."* 294 Or at 87-88. (Footnote omitted; emphasis supplied.)

■ Although the Supreme Court's dictum can be read as lending *some* support to petitioners' argument that a person's residency in a small planning area is sufficient in itself to make the person aggrieved by an amendment to the basic planning document, the court's language does not go as far as petitioners' argument, and we decline to do so. If it was intended that all persons residing in a planning area have standing to appeal to LUBA from any quasi-judicial amendment to the area's comprehensive plan, we are convinced that the legislature would have found a clear and specific way of saying so rather than conferring standing on that easily-defined class through the broad and amorphous term "aggrieved."

Petitioners also argue in support of their second assignment that their subarea

"* * * represented about 3% of the county population, having a population at that time of 6,064 persons.

"* * * * *

"* * * In very real practical terms, the strictness of standing rules applied to private landowners for rural comprehensive plan issues affects whether those decisions are reviewable or not. If 'sight and sound' is the touchstone of analysis, due to the isolated nature of private rural land holdings, premature conversion of rural resource lands will in many instances be unreviewable.

"Yet that risk of premature conversion is one of the fundamental reasons for the adoption of SB 100 in 1973. * * *"

Petitioners conclude that, if residency is insufficient to provide standing, there may be no possibility of an appeal

from significant land use decisions and the legislature therefore must have intended residency to provide standing.

In our view, that argument turns the inquiry inside out. It is manifest that, where the legislature makes the standing of the objector a condition precedent to review of a decision, it does not intend for review to occur if no one has standing. That point is emphasized by the fact that, *elsewhere* in the land use statutes, the legislature *has* provided for review proceedings that are not contingent on objection or the objector's standing, *e.g.,* comprehensive plan compliance acknowledgment pursuant to ORS 197.251. We reject petitioners' second assignment of error.

Petitioners' two remaining assignments are that LUBA erred in the test it applied and in its finding that petitioner Tony Cole was not "adversely affected" by the county's decision. Petitioner Tony Cole lives approximately five and one-half miles from the proposed development site and is not within "sight or sound" of it. He argues, however, that the Renaghans are required to widen and resurface Big Creek Road as a condition of the county's approval of the development, that that process will entail some clearing of trees and some restriction of traffic flow, that he may consequently encounter delays in his use of the road during construction with the results, *inter alia,* that he may be late for work, with resulting job or income loss; late in getting children to their school bus; and unable to obtain emergency medical care should the need for it arise when there is a delay in traffic.

LUBA sumarized its findings on the issue as follows:

"* * * [P]etitioner has alleged that the county's land use decision will cause him delay in travel which, in turn, may interfere with his ability to earn an income or obtain needed medical assistance. Given the period during which petitioner is likely to be exposed to some delay and the length of each delay to which he is likely to be exposed, we do not believe that the injuries which petitioner fears are reasonably likely to occur. While petitioner may be irked or aggravated at having to slow down while traveling on Big Creek Road, we do not believe this 'injury' is to an interest recognized under 1979 Or Laws, ch 772, sec 4(3), as amended by 1981 Or Laws, ch 748."

Petitioners argue that LUBA erred by requiring that "prejudice" be shown in order to establish that Cole was adversely affected and that, even if a showing of prejudice were necessary, LUBA erred by concluding that the requisite showing had not been made. Petitioners explain:

"All that is necessary in this case is that an effect or threat of effect exists. It is not necessary to separately show that the effect is prejudicial, only that it is unwanted.

"With respect to the Fourth Assignment of Error, if prejudice must be shown from unwanted effects of a land use decision, it should be shown by the possibility not probability of such injury. In this regard Petitioner Cole's affidavit * * * identifies potential effects of the road travel delays - delay in reaching workplaces, delays causing his children to miss the school bus, etc. To hold, as did LUBA below, that more proof was needed was error. Oregon law recognizes that 'possible injury . . . creates at least a plausible basis for standing.' *Clark v. Dagg,* 38 Or App 71, 79, 588 P2d 1298 (1979) * * *."

■ ■ In essence, petitioners are arguing that, under section 4(3), an adverse effect does not have to be "substantial" for standing to exist. We agree. *See Benton County v. Friends of Benton County, supra,* 294 Or at 85-86. However, we do not agree that LUBA denied standing to Cole because it found the adversities he alleged were insubstantial; LUBA found that the injuries were not "reasonably likely to occur," given "the amount of delay which petitioner Cole is likely to experience." In other words, LUBA found that the injuries were completely speculative. We find no error in the standard LUBA applied, and we conclude that its findings based on that standard were amply supported by the record.[3]

Affirmed.

---

[3] We also note that the allegations do not pertain to the ultimate land use authorized by the county's decision. The source of the alleged injuries is the initial construction phase of the development, the duration of which will be approximately eight days. We need not decide whether injuries which are connected to a land use decision only in that transient sense can give rise to standing under section 4(3).