Argued and submitted April 5, reversed and remanded June 19, 1984

WARREN,
*Petitioner Below,*
*and*

COLE et al,
*Petitioners on Review,*
*and*

MYROWITZ et al,
*Petitioners Below,*

*v.*

LANE COUNTY et al,
*Respondents on Review.*

(LUBA 81-102, CA A25365, SC 29672)

686 P2d 316

Timothy J. Sercombe, Eugene, argued the cause for petitioners. With him on the brief was Harrang & Swanson, Eugene.

William A. Van Vactor, County Counsel, Eugene, argued the cause and filed the brief for respondent Lane County.

Stephen T. Janik, Portland, argued the cause for respondents Renaghan. With him on the brief were Susan Quick Rosenfeld and Ball, Janik & Novack, Portland, and Michael E. Farthing and Husk, Gleaves, Swearingen, Larsen & Potter, Eugene.

CARSON, J.

## CARSON, J.

The Lane County Board of Commissioners amended the county's Coastal Subarea Plan and enacted zone changes for rural property owned by respondents Renaghan. The plan amendment and zone changes were adopted to allow commercial resort development of Renaghans' 186-acre tract. Petitioners Cole and others[1] sought Land Use Board of Appeals (LUBA) review of the county's decision, but LUBA dismissed their appeal on the ground that petitioners lacked standing to appeal. The Court of Appeals affirmed LUBA's order of dismissal, *Warren v. Lane County,* 62 Or App 682, 662 P2d 755 (1983), and affirmed it again upon reconsideration, in banc, 66 Or App 7, 672 P2d 1213 (1983).

We accepted review of this petition and of *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984), to clarify a part of the statutory test for standing to appeal a local land use decision to LUBA. For the reasons stated below, we reverse and remand.

## I. FACTUAL BACKGROUND

The Lane County land use decision of which petitioners seek LUBA review would enable the Renaghans to develop a 186-acre tract with the proposed 40-unit lodge, restaurant, trading post, 30 cabins, parking facilities, trails, two owners' residences, wells and drainfields. The property abuts Highway 101, 14 miles north of Florence. In order to authorize the development, Lane County amended its Coastal Subarea Plan. The amendment process required the county to take an exception to statewide land use planning Goal 4 (Forest Lands), pursuant to the exceptions process set forth in Goal 2. The plan amendment changed land designated Natural Resource Forest to Tourist Commercial (26 acres) and Conservation/Recreation/Open Space (160 acres). The zone

---

[1] Six petitioners filed a petition for review to LUBA. LUBA issued four orders on standing in this case, attempting to enunciate a workable test for determining when a person's interests are adversely affected or the person is aggrieved by a land use decision. After the third order on standing, LUBA received evidence on the factual standing allegations of petitioners Tony and Ginger Cole. In the final order LUBA concluded that the Coles did not have standing. The earlier orders had reached the same conclusion with respect to the other petitioners. Petitioners only appealed the final order. Only petitioners Cole petitioned to this court for review.

changes basically were from Forest Management to Tourist Commercial and Natural Resource.

Petitioners live within the Lane County Coastal Subarea, five and one-half miles from the proposed development. They are the closest residents to it. The road they travel to reach their property, Big Creek Road, cuts through a portion of the area to be developed. Petitioners appeared before the West Lane Planning Commission and testified orally in opposition to the proposed plan amendment. The planning commission recommended denial of the plan amendment to the Lane County Board of Commissioners and denied the request for zone changes. Renaghans appealed the denial of their zone change application to the board of commissioners, which held a public hearing, reversed the planning commission and voted to approve the plan amendment and zone changes to allow the development project. Petitioners appealed to LUBA, the Court of Appeals and to this court. During the pendency of petitioners' appeal, Lane County adopted a new comprehensive plan and zone designations for the rural portions of Lane County.[2] The new plan, adopted legislatively, repealed the prior comprehensive plan and zone designations and readopted, with some changes, the plan amendment and zone changes for the subject property here under review.

## II. MOOTNESS

Lane County seeks dismissal of this appeal on the ground that it is now moot because the amended plan has since been repealed and superseded by a new plan. The question whether an appeal challenging a land use decision becomes moot when the local governing body adopts a new comprehensive plan incorporating essentially the same changes (plan amendment and rezoning) as those challenged on appeal is answered by determining whether a decision on the merits in the case would resolve merely an abstract question without practical effect. In this case, the land which the Renaghans seek to develop is forest land and its use is

[2] The new comprehensive plan has been submitted to the Land Conservation and Development Commission for acknowledgment pursuant to ORS 197.251.

controlled by statewide land use planning Goal 4.[3] The proposed development does not comply with Goal 4, therefore, the county was required to justify an exception to the goal. An exception is authorized when "compelling reasons and facts" demonstrate that "it is not possible to apply the appropriate goal to specific properties or situations * * *." Goal 2, Part II. The criteria the county must meet in establishing an exception are set forth in Goal 2, Part II.[4] Regardless of the name or designation given this zone,[5] both the challenged plan amendment and the subsequent adoption of a new plan incorporating a similar plan amendment and rezoning require an exception to Goal 4. Whether the county's factual findings in support of the Goal 2 exception criteria are supported by substantial evidence is one issue raised by petitioners in this appeal.[6] In enacting the new plan and adopting a plan

---

[3]

    Goal 4: "To conserve forest lands for forest uses.

    "Forest land shall be retained for the production of wood fiber and other forest uses. Lands suitable for forest uses shall be inventoried and designated as forest lands. Existing forest land uses shall be protected unless proposed changes are in conformance with the comprehensive plan.

    "* * * * *."

[4]

    Goal 2, Part II - Exceptions: "When, during the application of the statewide goals to plans, it appears that it is not possible to apply the appropriate goal to specific properties or situations, then each proposed exception to a goal shall be set forth during the plan preparation phases and also specifically noted in the notices of public hearing. The notices of hearing shall summarize the issues in an understandable and meaningful manner.

    "If the exception to the goal is adopted, then the compelling reasons and facts for that conclusion shall be completely set forth in the plan and shall include:

        "(a) Why these other uses should be provided for;

        "(b) What alternative locations within the area could be used for the proposed uses;

        "(c) What are the long term environmental, economic, social and energy consequences to the locality, the region or the state from not applying the goal or permitting the alternative use;

        "(d) A finding that the proposed uses will be compatible with other adjacent uses."

[5] The difference between the plan amendment and the subsequently adopted new comprehensive plan is that in the plan amendment the Renaghan property was planned and zoned for Tourist Commercial and in the new comprehensive plan the same property was planned and zoned for Destination Resort.

[6] In their petition for review to LUBA petitioners contended: (1) Lane County gave inadequate public notice of the plan amendment hearing before the county

amendment for the same property in dispute, the Lane County Board of Commissioners readopted the same findings of fact and conclusions of law to support an exception to Goal 4 as those relied upon in the first plan amendment. Because these same findings of fact and conclusions of law form the basis of the county's new comprehensive plan for the subject property, the issues raised by petitioners questioning the sufficiency of those findings to support the goal exception, plan amendment and zone changes are not moot.

In its motion to dismiss, Lane County relies on *Citadel Corp. v. Tillamook Co.*, 66 Or App 965, 675 P2d 1114 (1984), *Carmel Estates, Inc. v. LCDC*, 51 Or App 435, 625 P2d 1367 (1981), *rev den* 291 Or 309 (1981) and *Card v. Flegel*, 26 Or App 783, 554 P2d 596 (1976), all of which are inapposite. In *Carmel Estates*, the county held hearings and made new findings before enacting a new ordinance which was held to supersede the prior one, rendering an appeal challenging the prior ordinance moot. For the purposes of judicial review, a new ordinance enacted on a new record and different findings will generally supersede the prior one and render any decision on the sufficiency of the prior record moot. Such is not the case here.

■ For purposes of judicial review, adopting a new comprehensive plan, which, in effect, readopts a prior plan amendment and is enacted on essentially the same findings, does not moot a prior appeal challenging the adequacy of those findings. A determination by LUBA of substantive issues raised by petitioners would not be meaningless. The effect of the recently adopted new comprehensive plan and zone designations for the subject property is that, on remand, LUBA would determine whether the new plan complied with goal exception standards. We hold that this appeal is not moot and deny Lane County's motion to dismiss.

commissioners; (2) The plan amendment was adopted prior to the entry of supporting findings; (3) The findings on particular issues were not supported by substantial evidence in the record; and (4) The county's findings failed to justify a Goal 2 exception to Goal 4 (Forest Lands).

## III. STANDING TO APPEAL TO LUBA

### A. *Appearance Before the Local Governing Body*

The second issue this case presents is whether petitioners "appeared" before the local governing body as is required to appeal a quasi-judicial land use decision.[7]

The relevant statutory provisions for standing to appeal a quasi-judicial land use decision to LUBA are found in section 4(3) of Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748, section 35.[8] Section 4(3) provides:

> "Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

> "(a) Appeared before the local government or special district governing body or state agency orally or in writing; and

> "(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

Petitioners appeared and testified orally at the West Lane Planning Commission hearing. The planning commission was responsible for making a recommendation and report to the county board of commissioners on the proposed plan amendment. The planning commission held hearings on two days and then voted to reject the plan amendment and zone changes at issue. Petitioners did not testify at the subsequent

---

[7] The parties seemed to agree before LUBA, without explanation, that the land use decision at issue was quasi-judicial. The distinction between quasi-judicial and legislative land use decisions is significant because there is no requirement of an appearance before the local governing body to appeal a legislative decision. Whether a land use decision is properly characterized as legislative or quasi-judicial is not determined by agreement among the parties or by the type of proceeding that the local body actually holds. However, because the character of this land use decision was not made an issue in this case, we do not decide it.

[8] Subsequent to our opinion in *Benton County v. Friends of Benton County*, 294 Or 79, 653 P2d 1249 (1982) this section was repealed by Oregon Laws 1983, chapter 827, section 59, effective October 1, 1983. Section 31(3) of the 1983 act (codified at ORS 197.830) establishes standing criteria for appeals to LUBA from quasi-judicial land use decisions. We note that the legislature retained the separate terms "aggrieved" or "adversely affected."

hearing before the county commissioners. Respondents argue that "appearance before the local government * * * governing body" requires direct appearance — *i.e.,* oral or written testimony to the governing body, in this case the Lane County Board of Commissioners, that made the final decision which petitioners seek to appeal.

■ LUBA determined that petitioners' appearance before the planning commission was a sufficient appearance under section 4(3), because it was an appearance "at some stage of the proceedings" before the governing body, citing *Weber v. Clackamas County,* 3 Or LUBA 237 (1981). We concur with LUBA's reasoning in *Weber* that the legislative history of Oregon Laws 1979, chapter 772 indicates that the legislature made the appearance requirement in order to prevent persons from doing nothing until after a quasi-judicial land use decision has been made, and then appealing the decision by showing adverse effect or dissatisfaction with it. The legislature required that in order to appeal, persons must first get involved and offer their views at the local level. Appearing before the hearings officer or planning commission, whichever is delegated responsibility to make land use decisions or gather evidence and make recommendations to the governing body, furthers the legislative policy of involving people and hearing their views at the local level.

■ ■ There may be instances where an appearance "at some stage" of the decision-making process will not meet the section 4(3)(a) requirement.[9] However, in a case such as this, where the local governing body bases its land use decision, in whole or in part, on the record obtained in a prior proceeding before a planning commission, hearings officer, or other approval authority, whichever is delegated responsibility to gather evidence and make land use decisions or recommendations to the local governing body, then an appearance on the

9 Local procedures vary and it would be imprudent to suggest an inclusive rule. For example, at least three variations of the process by which local governments make land use decisions are possible: (1) The local government reaches a decision based solely on the record of the proceedings below; (2) The local government's decision is made with the benefit of the record created below, plus new evidence received by the body making the decision on review; or (3) The local government decides without any regard to prior hearings or the record, if any, of proceedings below. We do not decide here whether an appearance at some preliminary stage of this last hypothetical decision-making process would satisfy section 4(3)(a).

record before that authority is an appearance before the local governing body. The test is not, of course, whether the local governing body actually considers or is persuaded by the record made below, but only whether local ordinances require that a record in the prior stage of the local proceeding be made and forwarded to the local governing body for consideration.

■  Respondents contend that according to Lane County ordinance the county commissioners' hearing in the present case was "de novo" and not confined to the record below. Whatever meaning Lane County may attach to the words "de novo" in this context,[10] it is clear from the record that the planning commission's findings of fact, resolution recommending denial of the "Renaghan amendment," and minutes of the planning commission hearings were delivered to the county commissioners and made a part of the record before the commissioners, pursuant to Lane County ordinance. The minutes contained summaries of the statements of persons (including petitioners) who spoke for and against the "Renaghan amendment" before the West Lane Planning Commission. The board's own findings of fact and conclusions of law supporting its approval of the plan amendment and zone changes states: "The Board of Commissioners conducted a de novo review of both applications, which included all of the materials, information and documents submitted previously to the West Lane Planning Commission."

We hold that because petitioners appeared and testified orally before the West Lane Planning Commission, and because the county commissioners relied in whole or in part on the record made by the planning commission, petitioners have satisfied the statutory requirement of appearance before the local governing body, under section 4(3)(a). Thus, their standing to appeal to LUBA depends on whether they meet the other statutory prerequisites to maintaining an appeal, that is, whether they were entitled as of right to notice and hearing, had interests "adversely affected," or were "aggrieved" by the county's decision.

### B. Aggrievement

In their petition for review petitioners stated three separate bases for standing to appeal to LUBA. Petitioners'

---

[10] We were not provided with the applicable Lane County ordinances in their entirety.

first allegation is that they were aggrieved, within the meaning of section 4(3), by the allegedly defective public notice given of the hearing before the county commissioners and thus should be entitled to challenge the merits of the decision. Petitioners contend they would have participated in that hearing, but did not because the public notice was inadequate.[11] Both LUBA and the Court of Appeals ruled that defective public notice cannot be the basis of aggrievement to create standing under section 4(3). Because we hold that petitioners met the appearance requirement by their appearance before the planning commission, and because we find that petitioners are aggrieved on other grounds, we need not here decide this basis for standing to challenge the merits of the local land use decision.[12]

█ Petitioners' second allegation of standing is aggrievement arising from residency in the affected planning

---

[11] Petitioners do not contend that they were entitled as of right to notice and hearing.

[12] Petitioners contend that as residents of the Lane County Coastal Subarea, they were entitled to the public notice required by ORS 215.060, which provides:

"Action by the governing body of a county regarding the plan shall have no legal effect unless the governing body first conducts one or more public hearings on the plan and unless 10 days' advance public notice of each of the hearings is published in a newspaper of general circulation in the county or, in case the plan as it is to be heard concerns only part of the county, is so published in the territory so concerned and unless a majority of the members of the governing body approves the action. The notice provisions of this section shall not restrict the giving of notice by other means, including mail, radio and television."

If the required public notice is not given, the action taken by the local governing body "shall have no legal effect." Section 5(4)(a)(B) of Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748, section 36 provides that LUBA shall reverse or remand the land use decision under review when the board finds that the local government "failed to follow the procedure applicable to the matter before it in a manner that prejudiced substantial rights of the petitioner."

We have no doubt that a failure of process, such as inadequate public notice, that "prejudiced substantial rights of the petitioner" could result in negating the legal effect of the county's decision. Petitioners, however, did not seek to have LUBA reverse or remand the county's decision for failure to follow applicable notice procedures. Instead, petitioners sought standing to challenge the merits of the decision as persons "aggrieved." We do not here decide what, if any, appeal remedies are available when the local governing body gives defective public or individual notice. For instance, we do not decide whether defective public or individual notice dispenses with the appearance requirement in section 4(3), enabling persons to seek LUBA review of the merits of a local quasi-judicial land use decision, or whether a person who alleges defective notice or some other procedural error, when the person did not appear before the local governing body, can only get LUBA review of the procedural issues.

area. They contend, solely in the context of significant amendments to comprehensive plans, that any resident of a rural plan area, small in area and population, is legally aggrieved by a comprehensive plan amendment with which he or she is dissatisfied. Petitioners argue that a significant quasi-judicial change in a small comprehensive plan has plan-wide effects which affect all residents of the plan area.[13] LUBA declined to allow standing based solely on residency in the affected planning area. The Court of Appeals concurred.

■          Petitioners' reliance on their residency in a small planning area to establish aggrievement by a comprehensive plan amendment is misplaced. We clarified the distinction between aggrievement and adverse effect in *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984). In *Jefferson Landfill* we stated:

> "* * * to have standing to petition LUBA for review in a quasi-judicial proceeding as a person 'aggrieved,' a person must meet a two-part test:
>
> "FIRST PART (applicable to all petitioners before LUBA in quasi-judicial proceedings):
>
> "1.    The person filed a notice of intent to appeal; and
>
> "2.    The person appeared orally or in writing before the local land use decision-making body.
>
> "SECOND PART (as a person 'aggrieved'):
>
> "1.    The person's interest in the decision was recognized by the local land use decision-making body;
>
> "2.    The person asserted a position on the merits; and
>
> "3.    The local land use decision-making body reached a decision contrary to the position asserted by the person." 297 Or at 284.

■■          In *Jefferson Landfill* we noted that this construction of "aggrieved" gives to the local land use decision-makers a gate-keeping responsibility for appeals to LUBA. Local decision-makers, by ordinance or otherwise, may determine who will be admitted or excluded as an interested person or limited to the status of a disinterested witness in a quasi-judicial

---

[13] Petitioners also alleged that their interests were "adversely affected" by the decision because during the period of resort construction they would encounter travel delays on Big Creek Road, their means of access to their own property, and because they would no longer be able to use the Renaghan property for fishing and recreation. Because we decide that petitioners are "aggrieved" under section 4(3), it is unnecessary to discuss petitioners' allegations of "interests adversely affected."

proceeding. These determinations may vary according to the nature of the land use decision in dispute, the issues involved or the particular proceeding. If the decision-makers have not made such a determination, by ordinance or otherwise, it will be assumed that when a person appears before the local body and asserts a position on the merits, the person has a recognized interest in the outcome. *Jefferson Landfill, supra,* 297 Or at 287.

█ In their petition for review to LUBA, petitioners state that they appeared before the local decision-making body and gave oral testimony in opposition to the proposed plan amendment and zone changes.[14] Clearly, the county commissioners made a decision contrary to the position petitioners espoused to the planning commission. Absent a contrary determination by the local body or local ordinances which define a person's interest more narrowly, petitioners will be assumed to have an interest recognized by the local body.[15] Unless, on remand, respondents offer local ordinances which indicate that petitioners' interests were not recognized by the local body, petitioners will have met the statutory test for "aggrievement" under section 4(3). We hold that LUBA applied the wrong legal test for aggrievement and, upon application of the correct test to the facts stated in the petition for review, petitioners have alleged sufficient facts to allow them standing to appeal this land use decision to LUBA.

Reversed and remanded to LUBA for further proceedings.

---

[14] Oregon Laws 1979, chapter 772, section 4(6)(a), as amended, requires the facts upon which a petitioner claims standing to be stated in the petition for review. Petitioners' statement of standing in their petition to LUBA reads, in relevant part:

"I. STANDING

"This case involves review of an ordinance adopting a comprehensive subarea plan amendment and resolution enacting an intent to rezone upon satisfaction of particular conditions. Petitioners Tony Cole and Ginger Cole appeared before the West Lane Planning Commission, testifying in opposition to the proposal on April 8, 1981. * * *

"* * * * *"

[15] No one has cited Lane County ordinances to us for guidance regarding interested-person status for an amendment to a comprehensive plan. *See Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984).