DeVORE, P.J.
*627 Petitioner seeks judicial review after the Land Use Board of Appeals (LUBA) denied her motion to intervene in an appeal of the City of Eugene's approval of a development application. LUBA ruled that petitioner had not "appeared" before the city during the proceedings on the application and therefore was not entitled to intervene *495 before LUBA. See ORS 197.830(7)(b) (limiting "[p]ersons who may intervene" to the applicant and "[p]ersons who appeared before the local government, special district or state agency, orally or in writing"). On judicial review, petitioner argues that she "appeared" in writing through a "Neighbor Report" submitted to the city in opposition to the application, which identified her as one of the neighbors who endorsed the recommendations in the report. For the reasons that follow, we agree with LUBA's conclusion that being listed in the report as an endorser was not sufficient to "appear" before the local government as that term is used in ORS 197.830 (7)(b). Accordingly, we affirm LUBA's order.
The dispute over the development application underlying this case has generated multiple LUBA and Court of Appeals decisions, but the background pertinent to the issue presented by this petition for judicial review is relatively straightforward.[1] We draw the general summary of that background from LUBA's final order:
"This is the third time the city has approved the Oakleigh Meadows [planned unit development (PUD) ], and the third appeal to LUBA involving this application. In December 2013, the city planning commission tentatively approved a 29-unit PUD on the 2.3-acre subject parcel, with conditions of approval. The only access to the subject parcel is via Oakleigh Lane, an east/west street that runs west from River Road approximately 850 feet to dead-end near the subject property. ***
"* * * * *
"The city's initial 2013 decision required intervenor-respondent Oakleigh Meadow Co-Housing (OMC) to dedicate right-of-way and improve the right-of-way adjacent *628 to the subject property, in part to provide a fire lane and turnaround; but the 2013 decision did not require OMC to improve any portion of Oakleigh Lane other than that immediately adjacent to the subject property. After an initial trip up and down the appellate ladder, in 2015 the planning commission re-opened the evidentiary record to accept additional testimony and evidence regarding the safety and adequacy of the (1) right-of-way width of Oakleigh Lane, (2) pavement width of Oakleigh Lane, and (3) parking on Oakleigh Lane. ***
"After a second trip up and down the appellate ladder to correct a new procedural error stemming from the 2015 proceeding, in 2017 the planning commission conducted new evidentiary proceedings limited to the same issues identified in the 2015 remand. At the conclusion of the 2017 remand proceedings, the planning commission adopted new findings and imposed a new condition of approval *** intended to ensure compliance with EC 9.8320(5), which requires that the PUD provide 'safe and adequate' transportation systems to connect to nearby areas."
(Footnotes omitted.)
After the planning commission's most recent approval, two opponents of the PUD, Paul Conte and Bryn Thoms, initiated this latest appeal to LUBA. Petitioner, Olive Rossman, subsequently filed a motion to intervene in the appeal. The city objected to that motion, arguing that petitioner had been notified of the public hearing but had not thereafter "appeared" before the local government, making her ineligible to intervene under ORS 197.830(7).
The parties' dispute over whether petitioner "appeared" before the city ultimately turned on the legal significance of a document entitled "Neighbor Report Recommending Denial of Land Use Applications PDT 13-0001 and WG 13-0001" (the Neighbor Report). That document, which was received by the city on October 9, 2013, had been created by, and represented the views of, multiple people. The first page of the report included the following recitals:
"Prepared by: Oakleigh and McClure Neighbors.
*496 "Lead Authors -Bryn Thoms, John Fenn, Lara Bovilsky, Terrence Killian, Laura Regan.
*629 "Supporting Authors -Sandy Thoms, Shawn Johnson, Maj Hutchinson, Anne Love, Tammy Crafton, Cecelia Baxter-Heintz, Jill Bushelman, Rich Dambrov, Rachel Stedman, Scott Stedman, Jamil Jona, Kareen Fleener-Gould, Lisa Gilman."
(Boldface in original.) The report then states, "The following residents of the Oakleigh Area neighborhood endorse the recommendations of this document," followed by a list of more than 50 addresses on Oakleigh Lane and McClure Lane, as well as their occupants. Petitioner's name and address are on that list of residents who "endorse" the recommendations in the report.
In petitioner's view, her endorsement of the report constituted an "appearance" before the city. The city disagreed, arguing that the report had actually been submitted by one of the lead authors, Bryn Thoms, and was predominantly prepared by him and other "lead authors." According to the city, there was no "assertion or evidence that [petitioner] authorized the authors to submit the Report on her behalf," and it "does not include any statement that Mr. Thoms or another author was serving as [petitioner's] representative" or "any statement that it was submitted on behalf of those who 'endorsed' its recommendations."
LUBA agreed with the city and denied the motion to intervene. LUBA explained:
"*** To demonstrate an appearance, a person need not assert a position on the merits of the proposed land use action. A bare, neutral appearance, such as a letter requesting that the local government accept the letter as an appearance and provide notice of the decision, is sufficient. Century Properties, LLC v. City of Corvallis , 51 Or. LUBA 572, 586, aff'd , 207 Or. App. 8, 139 P.3d 990 (2006). Nonetheless, the person must, at a minimum, submit a document or oral testimony that the local government would reasonably recognize as an appearance by that person, i.e. , a request to join the land use proceeding as a party, and henceforth be provided notices of the hearing and decision.
"That the Report included [petitioner's] name and address, and a statement from the authors of the Report that [petitioner] among others 'endorsed' the authors'
*630 recommendations, was not sufficient to put the city on reasonable notice that [petitioner] wished to appear as a party in the proceeding and, accordingly, become entitled to notice of the decision. If it were otherwise, attaching a list of names to one's testimony, and stating that everyone on the list endorses one's testimony, would be sufficient to constitute an 'appearance' by every person listed. To make an appearance, the putative party must provide statements that a reasonable person would recognize as a request to join the proceedings as a party. A reasonable person would not recognize, from the mere inclusion of [petitioner's] name in a list of persons whom the Report's authors claim endorse the Report, that [petitioner] and others on that list were seeking to appear in the proceeding as a party.
"[Petitioner] does not argue that the authors of the Report or anyone else represented her during the proceedings below. [Petitioner] was not one of the listed authors of the Report, and did not submit it or any other document or testimony to the city. We conclude that [petitioner] has failed to demonstrate that she 'appeared' before the local government, orally or in writing, for purposes of ORS 197.830 (7)(b)(B). [Petitioner's] motion to intervene is denied."
(Emphasis added.)
Petitioner seeks judicial review of that ruling, arguing that LUBA misconstrued what it means to "appear" for purposes of ORS 197.830(7)(b)(B). She contends that courts (and, for that matter, LUBA) have previously interpreted the appearance requirement more liberally, and that her inclusion in the Neighbor Report more than satisfies that liberal interpretation. Specifically, she argues that her "endorsement" was an expression of definite approval of the report and was "as if [she] submitted a signed statement" advancing her position before the local government. In response, the city and the applicant, Oakleigh Meadow Co-Housing, *497 defend LUBA's reasoning and urge us to affirm LUBA's final order.[2] *631 The parties' arguments present a question of statutory construction regarding the meaning of ORS 197.830 (7)(b)(B). In an effort to determine the legislature's intended meaning, we look to the text of the statute, in context, along with any pertinent legislative history, relevant case law, and other aids to construction. See Unger v. Rosenblum , 362 Or. 210, 221, 407 P.3d 817 (2017) (summarizing the template for interpretation set forth in State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009) ).[3]
The text of ORS 197.830 includes two separate, essentially identical requirements that a person "appear" before the local government before appealing to LUBA or intervening in such an appeal. Subsection (2) of the statute, which concerns appeals to LUBA, provides:
"(2) Except as provided in ORS 197.620, a person may petition the board for review of a land use decision or limited land use decision if the person:
"(a) Filed a notice of intent to appeal the decision as provided in subsection (1) of this section; and *632 "(b) Appeared before the local government, special district or state agency orally or in writing ."
(Emphasis added.) Subsection (7), which provides the parallel requirement for intervenors, provides:
"(7)(a) Within 21 days after a notice of intent to appeal has been filed with the board under subsection (1) of this section, any person described in paragraph (b) of this subsection may intervene in and be made a party to the review proceeding by filing a motion to intervene and by paying a filing fee of $100.
"(b) Persons who may intervene in and be made a party to the review proceedings, as set forth in subsection (1) of this section, are:
"(A) The applicant who initiated the action before the local government, special district or state agency; or
"(B) Persons who appeared before the local government, special district or state agency, orally or in writing ."
(Emphasis added.)
As petitioner's arguments and LUBA's opinion suggest, we do not write on a blank slate with respect to what "appeared" means *498 in those two provisions. The requirement that a LUBA petitioner or intervenor has "appeared before the local government, special district or state agency, orally or in writing" has essentially been part of Oregon law since LUBA was created in 1979. See Or. Laws 1979, ch. 772, § 4(3)(a) (limiting persons who may file a petition for review or intervene to persons who "[a]ppeared before the city, county or special district governing body or state agency orally or in writing"). And shortly thereafter, the Supreme Court was called upon to "clarify" that part of "the statutory test for standing to appeal a local land use decision to LUBA." See Warren v. Lane County , 297 Or. 290, 292, 686 P.2d 316 (1984).
In Warren , the petitioners had appeared and testified before the planning commission but not at a subsequent hearing before the county board of commissioners, which made the final decision that the petitioners sought to appeal.
*633 LUBA determined that the petitioners had "appeared" for purposes of statutory standing to appeal to LUBA, because they had appeared at " 'some stage of the proceedings.' " 297 Or. at 297, 686 P.2d 316 (quoting LUBA). The Supreme Court agreed and concurred in LUBA's reasoning that legislative history indicated that "the legislature made the appearance requirement in order to prevent persons from doing nothing until after a quasi-judicial land use decision has been made, and then appealing the decision by showing adverse effect or dissatisfaction with it." Id . The court explained:
"The legislature required that in order to appeal, persons must first get involved and offer their views at the local level. Appearing before the hearings officer or planning commission, whichever is delegated responsibility to make land use decisions or gather evidence and make recommendations to the governing body, furthers the legislative policy of involving people and hearing their views at the local level."
Id .
Whereas Warren described the general intent behind the term "appeared," we later discussed the meaning of that term more specifically in Century Properties, LLC v. City of Corvallis , 207 Or. App. 8, 13, 139 P.3d 990 (2006), albeit as context for interpreting a related statute, ORS 197.620. In Century Properties, LLC , LUBA had concluded that the petitioner lacked standing to appeal certain ordinances that the City of Corvallis had adopted as part of its periodic review process. The statute governing standing in that circumstance, ORS 197.620(1), provided:
"Notwithstanding the requirements of ORS 197.830(2), persons who participated either orally or in writing in the local government proceedings leading to the adoption of an amendment to an acknowledged comprehensive plan or land use regulation or a new land use regulation may appeal the decision to the Land Use Board of Appeals[.]"
(Emphasis added.)
To determine the meaning of "participated either orally or in writing," we contrasted the term "participated" with the meaning of "appeared" in ORS 197.830 :
*634 "To 'appear' ordinarily means, at least in the sense that is relevant here, 'to come formally before an authoritative body *** to present oneself formally as plaintiff, defendant, or counsel.' Webster's Third New Int'l Dictionary 103 (unabridged ed. 2002). Consistent with that ordinary meaning, in legal terminology, to make an 'appearance' means merely 'coming into court[.]' Black's Law Dictionary 89 (5th ed. 1979). To 'participate,' on the other hand, ordinarily means 'to take part in something (as an enterprise or activity) usu. in common with others[.]' Webster's at 1646. Likewise, in legal terminology, it has a more active connotation, meaning '[t]o receive or have a part or share of; to partake of; experience in common with others; to have or enjoy a part or share in common with others. To partake, as to "participate" in a discussion, or in a pension or profit sharing plan.' Black's at 1007. Thus, the ordinary meanings of the terms suggest that a person could 'appear' in an action without actually 'participating' in it."
207 Or. App. at 13-14, 139 P.3d 990.
As part of our analysis, we considered the enactment history of ORS 197.830, including that the original 1979 legislation creating *499 LUBA had divided appealable land use decisions into two categories-legislative and quasi-judicial-and had imposed different standing requirements for appealing each category. The requirement that the person "appeared" before the local government applied only to the quasi-judicial land use decisions. Id. at 14, 139 P.3d 990 (citing Or. Laws 1979, ch. 772, § 4(3) ). Then, in 1989, the legislature "eliminated the different statutory standing requirements for appeals of legislative and quasi-judicial land use decisions to LUBA and substituted a single requirement that the person must have 'appeared' during the local proceedings." Id. at 16, 139 P.3d 990 (citing Or. Laws 1989, ch. 761, § 12). We contrasted that history with that of ORS 197.620, which had retained a "participation" requirement for appealing post-acknowledgment plan amendments, and concluded that ORS 197.620"requires more than merely making an appearance." Id. at 18, 139 P.3d 990.
Although neither Warren nor Century Properties, LLC answers the precise question before us, those cases underscore that an "appearance" has been understood as something less than "participation" in the sense of asserting *635 a position on the merits, but that it does require a level of "involvement" that is akin to coming formally before the local government body, similar to a party in a quasi-judicial proceeding. Warren , 297 Or. at 297, 686 P.2d 316 ; Century Properties, LLC , 207 Or. App. at 13-14, 139 P.3d 990.
Our own review of the legislative history of ORS 197.830 is consistent with the understanding that the legislature used the word "appeared" in accord with its ordinary meaning in this context-that is, to describe a level of involvement similar to a party in a quasi-judicial proceeding. As noted above, the "appeared" requirement for statutory standing dates to the creation of LUBA in 1979. The bill that enacted that law, Senate Bill 435, involved a policy debate about whether appeals should proceed before a land use court, county courts through a writ of review process, or through a land use board appeals process. See generally Exhibit F, Senate Legislative Committee on Trade and Economic Development, SB 435, Mar. 14, 1979 (describing possible approaches); Kent Hickam, The Land Use Board of Appeals , 16 Willamette L. Rev. 323 (1979) (describing the background of LUBA's creation).
From the earliest points in that policy discussion, legislators discussed the concept of "standing," with references to existing writ of review procedures and provisions in the Oregon Administrative Procedures Act. See, e.g. , Exhibit A, Senate Legislative Committee on Trade and Economic Development, SB 435, May 2, 1979 (committee memorandum proposing a three-phase discussion, including "Issue 1: Should the statutes further define who has standing for undertaking a writ of review in a land use appeals case?"). One of the proposals during that policy debate would have defined standing in terms of the failure to appear "in some manner, orally or in writing" after receiving notice:
"A person has 'standing' if that person's interests are adversely affected or aggrieved by the decision to be reviewed. Provided, however, that if a person whose interests are adversely affected or aggrieved received written notice prior to the hearing on the decision to be reviewed and failed to appear before the city, county or special district or state agency in some manner, orally or in writing, then *636 that person shall be deemed not to have standing to petition for review ."
Exhibit C, Senate Legislative Committee on Trade and Economic Development, SB 435, May 2, 1979 (emphasis added).
After the policy debate was settled in favor of a land use board of appeals rather than a court review process, the bill returned to a subcommittee and included paragraphs on standing similar to the proposal above. The main revisions to that text, and which ultimately became the "appeared" requirement, came in the wake of a subcommittee work session on May 14, 1979. Although most of the discussion focused on the "interest" necessary for standing, the subcommittee also discussed the requirements of notice and appearance. Specifically, legislators discussed the possibility that the "appeared" requirement, as drafted, was a "built-in trap" for people, because it might be difficult for individuals *500 to prove that they had received notice from the local government. But, rather than delete that requirement (as was urged, on the ground that courts had been liberalizing standing requirements), the subcommittee chair instead emphasized the nature of quasi-judicial decision-making. He explained that such decisions are made by the local government, not a later reviewing body like a court of appeals or board of appeals, so it is imperative that the decision-maker has all of the information at the time of the hearing. And, despite an objection that it was mere "fallacy" that information was presented that way to a local government-because there were not parties in a traditional sense, and no obligation to serve a complaint as in true litigation-the subcommittee retained the requirement of an appearance, consistently with the desire to avoid "sand-bagging." Tape Recording, Senate Subcommittee on Trade and Economic Development, SB 435, May 14, 1979, Tape 1, Side 2. The draft that emerged, as modified in response to suggestions from the governor's office, provided:
"(3) Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:
"(a) Appeared before the city, county or special district governing body or state agency, orally or in writing; and *637 "(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests were adversely affected or who was aggrieved by the decision."
Exhibit C, Senate Subcommittee on Trade and Economic Development, SB 435, May 23, 1979. That version of the "appeared" requirement was ultimately enacted as part of 1979 Or. Laws, ch. 772, section 4, and it has not materially changed since.
That history confirms that, even if the legislature understood "appeared" to mean something short of "participation," the concepts were nevertheless related. As originally enacted, the legislature would have understood an "appearance" before the local government to be the kind of involvement necessary to facilitate full development of the record and fairness to the parties and the tribunal.
Nothing in the later amendments to ORS 197.830 persuades us that the legislature intended to depart from that understanding. As described in Century Properties, LLC , the legislature in 1989 eliminated the different statutory standing requirements for LUBA appeals of legislative and quasi-judicial land use decisions, leaving only the requirement that the person must have "appeared" during the local proceedings. Or. Laws 1989, ch. 761, § 12. As part of the same bill, the legislature enacted a so-called "raise-it-or-waive-it" provision, limiting LUBA's review to those issues that were raised before the local government. See Or. Laws 1989, ch. 761, § 10a(1) ("An issue which may be the basis for an appeal to the board shall be raised not later than the close of the record at or following the final evidentiary hearing on the proposal before the local government. Such issues shall be raised with sufficient specificity so as to afford the governing body, planning commission, hearings body or hearings officer, and the parties an adequate opportunity to respond to each issue."); Or. Laws 1989, ch. 761, § 12(10) (making corresponding changes to limit issues to "those raised by any participant before the local hearings body"). Moreover, a later-enacted provision, ORS 197.195, requires the local government to provide "[w]ritten notice of the decision rendered on appeal *** to all parties who appeared, *638 either orally or in writing, before the hearing "-further indication that the legislature understood the requirement that someone has "appeared" to be bound up in that person's status as a party to a quasi-judicial proceeding and with the local government's obligation to provide meaningful opportunity for participation in the proceeding.
In sum, from the plain text of ORS 197.830, as described in Century Properties, LLC , and based on our understanding of the purpose of the "appeared" requirement and its enactment history, we agree with LUBA's observation that, in order to have "appeared," the person must have communicated to the local government, orally or in writing, in a manner that reasonably conveyed that *501 person's desire to be treated as a party to the local government process.
We further agree with LUBA's conclusion that the Neighbor Report did not reasonably convey that desire. The Neighbor Report was not submitted by petitioner, nor does the content of the report itself suggest that petitioner had a level of involvement in the report that would indicate that it was being submitted on petitioner's behalf as her own testimony. Although the report includes a statement that it was "Prepared by: Oakleigh and McClure Neighbors," it immediately follows that statement by identifying the "lead authors" and "supporting authors," and a later statement in the report asserts that it was "predominantly prepared by Bryn Thoms" along "with assistance from the lead authors presented above." Nothing in the report suggests that petitioner actually participated in its preparation, or that she had the type of direct or active involvement in its creation and submittal that would convey her intent to be a party to the proceedings.
Nor does her inclusion as an endorser of the report-one of the residents of more than 50 listed residences who endorsed the report-suggest that she intended to be a party to the proceedings. In fact, the list of residents who endorse the report's recommendations includes certain individuals who are identified by first name only ("Tim and Jen"), as well as a residence that is identified as "vacant." By listing endorsers, the authors added to the persuasiveness of the conclusions reached in the report by indicating broad *639 support for their views, but they did not convert every listed person (or residence) into a party who had appeared. In other words, the report conveyed that the endorsers agreed with parties to the proceeding, not that petitioner or others listed solely as endorsers intended to be parties themselves.
In sum, we are not aware of any textual, contextual, or historical support for petitioner's view that a listing of persons who agree with a position taken before a local government is, by itself, sufficient to establish that each of the listed persons has "appeared" within the meaning of ORS 197.830(7)(b)(B). Accordingly, we affirm.
Affirmed.

For further history of the underlying dispute, see, e.g. , Trautman/Conte v. City of Eugene , 280 Or. App. 752, 383 P.3d 420 (2016), and Oakleigh-McClure Neighbors v. City of Eugene , 269 Or. App. 176, 344 P.3d 503 (2015).

In addition to defending LUBA's reasoning on the merits, the city and Oakleigh Meadow Co-Housing argue that the petition for judicial review is untimely, because petitioner did not seek review of the order denying her motion to intervene and instead waited to seek judicial review of LUBA's "Final Opinion and Order." We reject that timeliness argument. LUBA's order on the motion to intervene was not a final order subject to judicial review under ORS 197.850 ; LUBA itself characterized the order on the motion to intervene as interlocutory rather than final, and it was possible that LUBA would revisit that decision before issuing its final order. See, e.g., Oakleigh-McClure Neighbors v. City of Eugene , 269 Or. App. 176, 180-81, 344 P.3d 503 (2015) (describing circumstances, in an earlier iteration of this case, in which LUBA "initially allowed the motion to intervene" but later "reconsidered its decision and, in its final order, denied [the] motion").

Although petitioner's argument primarily raises a question of statutory interpretation, she also appears to argue that, as a factual matter, the city "certainly recognized [petitioner's] appearance before the hearings official," because it sent a notice of remand to her in July 2015 acknowledging that she was "involved in the hearing process when the matter was first submitted to the hearings official." However, the record does not support petitioner's assertion that the city recognized her as having appeared as a result of the Neighbor Report. The record indicates that petitioner was on a mailing list in August 2013 for notice to property owners who "own or occupy property very near" the property proposed for development. Thereafter, in October 2013, the Neighbor Report was submitted. Yet, none of the subsequent notices with regard to the initial proceedings appear to have been mailed to her; she is not included on the mailing list for a planning commission meeting scheduled for December 5, 2013, nor was she included on the mailing list for notice of the city's December 16, 2013, decision to affirm the hearing official's approval, or subsequent January and February 2014 notices of decision that were sent after it was discovered that some individuals who had appeared before the planning commission had been omitted from the December notice of decision. Given that history, the recital in the notice after remand from LUBA-which generically identified the recipients of the notice as persons "involved in the hearing process"-cannot plausibly be read as an acknowledgment of petitioner's appearance by way of the Neighbor Report.